UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MARCUS MATTHEWS, # 623952, ) | |
| ) | |
| Petitioner, ) | Case No. 1:08-cv-1114 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| THOMAS BIRKETT, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. ) | |
| ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner is serving concurrent prison terms after entering a plea of guilty to second-degree murder, MICH. COMP. LAWS § 750.317, arson of a dwelling, MICH. COMP. LAWS § 750.72, and unlawful driving away of an automobile, MICH. COMP. LAWS § 750.413. On October 9, 2006, the Ingham County Circuit Court sentenced petitioner to concurrent terms of 40-to-60 years on the second-degree murder conviction, 10-to-20 years on the arson conviction, and 3-to-5 years on the auto theft conviction. Petitioner, represented by appointed counsel, sought leave to appeal his conviction to the Michigan Court of Appeals, which denied review, finding lack of merit in the grounds presented. The state Supreme Court denied discretionary review.

Petitioner filed this *pro se* habeas corpus action on November 28, 2008. The petition, read with the required liberality, asserts the same two grounds that were raised and rejected in the state appellate system:

1. The trial court violated petitioner's due-process rights for failing to determine his competence at the time of sentencing.

2. Petitioner was denied the right to meaningful allocution at sentencing because of his lack of competency.

Respondent has filed an answer to the petition, supported by the state-court record. This matter has been referred to me for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B); *see* Rule 10, RULES GOVERNING SECTION 2254 CASES IN THE UNITED STATES DISTRICT COURTS. Upon review of the record, I conclude that petitioner has failed to establish any grounds for habeas corpus relief and recommend that the petition be denied on its merits.

**Proposed Findings of Fact**

**A.  Trial Court Proceedings**

This prosecution arose from the murder of Sara Mares in Lansing, Michigan, on December 14, 2005. Officers were dispatched to an address on Cypress Street on reports of a house fire. Upon arrival at the scene, officers were informed by firefighters that a dead body was found in the house. The firefighters believed an accelerant, probably gasoline, had been used to start the fire. Officers learned that the victim lived alone and that her vehicle was missing from the garage.

Officers quickly focused on petitioner, a 16-year-old young man who had been seen near the house around the time of the crime. On the day of the crime, officers interviewed petitioner at the home of his guardian, after advising him of his *Miranda* rights. Petitioner made a statement to detectives, admitting that he had knocked on the door of the victim's residence, asking to use her phone. Once inside, he demanded money. Petitioner claimed that Ms. Mares attempted to stab him with a knife and that he took it from her and stabbed her in the neck. He moved her to the bedroom,

placed her on the bed, and started the bedroom on fire with gasoline that he found in the garage. He took money from the victim's residence and then drove her car from the garage. Officers lodged petitioner at the county youth home.

Subsequent investigation disclosed that the victim was 69-years-old. An autopsy showed that she had four stab wounds in the upper part of her back, multiple stab wounds in the neck, blunt force trauma of the head, and significant burns over her body. The lack of soot in her lungs indicated that she was dead before the fire was ignited. The cause of death was determined to be multiple stab wounds of the back and neck and the manner of death to be homicide. (*See* Michigan Department of Corrections Pre-Sentence Investigation Report, ID#s 81-83). Petitioner was charged as an adult in a criminal complaint.

Petitioner, accompanied by counsel, appeared before the 54-A District Court on December 18, 2005. He was remanded to the custody of the county juvenile home. (Order of 12/19/05, found in Michigan Court of Appeals Record, docket # 13). A preliminary examination was scheduled on charges of first-degree, felony murder, arson of a dwelling, and unlawful driving away of an automobile. The examination was postponed, however, for purposes of completing a forensic examination on the issues of competency and legal responsibility. (Orders of 12/27/05 and 12/29/05, found in docket # 13).

On February 23, 2006, the Michigan Center for Forensic Psychiatry issued a five-page competency evaluation by Thomas G. Brewer, Ph.D. (ID#s 119-123). On March 14, 2006, Dr. Brewer issued a much longer report on criminal responsibility (ID#s 103-118). The reports indicated that the examiner had amassed records from a number of social services agencies that had dealt with petitioner in the past. Petitioner was transported to the forensic center for evaluation. In addition

to a clinical interview lasting nearly four hours, the psychologist administered the Minnesota Multi-Phasic Personality Inventory for Adolescents. With regard to cognitive functioning, the examiner noted no gross impairments or limitations. (ID# 114). Petitioner spoke in an organized, goal-directed and spontaneous manner and demonstrated some capacity for abstract thought. The examiner assessed petitioner's overall intellectual functioning in the "borderline" range.

With regard to mood, petitioner was neither elated nor depressed and denied experiencing problems with appetite, energy level, or capacity for clear thinking. He denied suicidal or homicidal ideations and denied that he had ever been severely depressed or that he had attempted suicide. The examiner noted that petitioner did not manifest any delusional beliefs or thoughts and that he denied experiencing any sort of hallucination or thought disorder. (*Id.*). The psychological test failed to show the presence of mental illness, but the examiner noted that there were indicia that the validity of the test should be reviewed with caution. "However, at the time of the evaluation it was this examiner's opinion that Mr. Matthews was free of symptoms suggestive of mental illness." (ID# 115).

Dr. Brewer noted that petitioner had been diagnosed in the past as manifesting symptoms of major depressive disorder, psychotic disorder, post-traumatic stress disorder, anxiety disorder, attention deficit/hyperactivity disorder, oppositional defiant disorder and conduct disorder. He further noted, however, that after early 2004, petitioner was no longer diagnosed as manifesting symptoms of any psychotic disorder. After that time, his major depressive disorder was deemed to be in partial or full remission, and treatment thereafter was focused on his oppositional and defiant behavior and substance abuse. (ID# 116).

Dr. Brewer found that petitioner was competent to stand trial. Petitioner understood the nature and object of the criminal proceedings against him, was aware of his constitutional rights and understood his options. Additionally, the examiner found that petitioner possessed the capacity to assist in his own defense in a rational manner. (ID# 122-23). The examiner found that petitioner was not legally insane, as he was neither mentally retarded nor mentally ill. He had the capacity to appreciate the nature and quality of the wrongfulness of his conduct and the ability to conform his conduct to the requirements of law. (ID# 115-18).

The parties appeared before the state district court for a preliminary examination on May 9, 2006. At the outset of the proceedings, the attorneys stipulated to the dismissal of the first-degree, felony murder charge in favor of a charge of open murder.[1] (Preliminary Examination Transcript (PE), docket # 10, at 3). The parties also stipulated that blood found on petitioner's coat and jeans matched the victim's DNA. (*Id.*, 3-4). The prosecutor called eight witnesses to establish the elements of murder, arson, and unlawful driving away of an automobile. (PE, 4-60). The prosecutor then called Detective James Gill, who testified concerning petitioner's giving of a *Mirandized* statement at the police station. During the interview, petitioner admitted killing the victim, setting her body on fire, and stealing money and her car. (PE, 63-67). At the end of the hearing, the district judge bound over petitioner to circuit court on all charges. (PE, 71-73).

Petitioner and his counsel appeared before the circuit court for purposes of entry of a guilty plea on October 9, 2006. Petitioner agreed to plead guilty to a reduced charge of second-degree murder, in addition to arson of a dwelling and unlawful driving away of an automobile. The

---

[1] Under Michigan law, an open murder charge allows the jury to return a verdict on first-degree murder, second-degree murder, or manslaughter, as the facts dictate. *See People v. Johnson*, 398 N.W.2d 219 (Mich. 1986).

guilty plea was based on a "*Killebrew* agreement," pursuant to which the parties stipulated to a 40-year minimum sentence and a 60-year maximum sentence on the murder conviction.[2] (Plea Transcript (PT), docket # 11, at 5). Petitioner thus was spared a mandatory, unparolable life sentence. The court addressed petitioner directly, asking whether he understood the plea agreement, his rights, and the charges and penalties that he faced. In response to each question, petitioner answered, "Yes, ma'am" or "No, ma'am." The court then questioned petitioner concerning the factual basis for the plea:

> Q. Are you pleading guilty because you are guilty?
> A. Yes, ma'am.
> Q. On or about December 14th, 2005, County of Ingham, were you at 801 Cypress?
> A. Yes, ma'am, I was.
> Q. Did you live there?
> A. No, ma'am.
> Q. And did you enter that home? Did you go into that house?
> A. Oh, yes, ma'am.
> Q. While you were in that house, what did you do?
> A. I tried the [sic] steal a car and I ended up killing the victim.
> Q. What else did you do?
> A. I burnt the house down.
> Q. Did the car belong to you?
> A. No, ma'am.
> Q. Did you have permission from the owner to take the car?
> A. No, ma'am.
>
> THE COURT: Additional questions for the factual basis for Count 2, 3 and 5 Prosecutor or Defense?
>
> MR. DEWAYNE: Judge, if I could inquire just briefly.
>
> THE COURT: You may.

---

[2] *See People v. Killebrew*, 330 N.W.2d 834 (Mich. 1982). A *Killebrew* sentence agreement is binding between the parties, but if the judge rejects the sentencing recommendation, the defendant has the right to withdraw the guilty plea and proceed to trial. *See Leatherman v. Palmer*, 387 F. App'x 533, 534 (6th Cir. 2010).

BY MR. DEWAYNE:

Q. Mr. Matthews, when you went in that home, is it true you did kill Sara Mares?
A. That's true.
Q. All right. And, that wasn't with the premeditation and deliberation. Is that correct?
A. Yes, sir.
Q. All right. And, after you killed her, is it true that you then lit the house on fire with gasoline?
A. Yes, sir, it is.
Q. And, is it true that after that you then took her car without permission and drove away?
A. Yes, sir.

(PT, 7-8). The court accepted the guilty plea and set the matter for sentencing.

In connection with sentencing, an agent of the Michigan Department of Corrections submitted a presentence investigation report (ID# 92-102). In setting forth petitioner's social history, the report noted the following: "Marcus was shuttled between foster care placements, youth correctional facilities, and psychiatric hospitalizations for much of the last five years. He was diagnosed ADHD, and received numerous other mental health diagnoses. He has been on and off many psychotropic medications, with little success." (ID# 94). The report set forth petitioner's version of events, reproduced verbatim below:

> Well what happed the day of 12-14-5 I have no excuse for what I did. the day of the crime I was a little down for getting played so much. What I mean by that is nobody wanted to drive me no were, give me money, and so on. So I took it upon myself to steal a car. And that's how I'm in this miss know.
>
> I didn't know how or were I was going to get a car. Until I cam upon Ms. Mares. I didn't know her and I only talked to her once or twice. But I did know she lived by herself from nieghbors. So the day of the crime I thought I could steal a car from her without thinking of what could happen.
>
> This is a short version of what happen: It was around probably 7:30 when I knocked on her door and ask to use the phone. She did let me in and I wasn't sure if I really

was gonna do it. But I close the door and she turned her back on me and I thought it was my only chance. So I put my arm's around her neck and told her to give me the keys to the car. But we kind of tussle b-cuz she was trying to get a knife which I notice almost to late so we tussled over the knife and I got I at the end. That's how the killing came in. I really didn't have any plans of killing I swear. But I took the knife and stapped her until I was sure she was dead and then I grabbed the keys she showed to the key and was planing to leave when I seen gasoline in the place were her car was. So I seen from a movie when stuff get on fire usually stuff can't point to you. So I really though I'll get away. And then I set the house on fire. And now I'm going do years for what I did.

I wanna apologize to the family and court in person at my sentence date.

(ID# 96).

The parties appeared before the circuit court on November 15, 2006, for purposes of sentencing. (*See* Sentencing Transcript (ST), docket # 11). Defense counsel lodged no objections to the presentence report and asked only that the court sentence petitioner in accordance with the *Killebrew* agreement. (ST, 14). Petitioner addressed the court as follows:

> THE COURT: Thank you. Comments by you, sir? Do you wish to say anything to me regarding this case?
>
> THE DEFENDANT: No. I want to apologize to the family, but I guess you got the paper. I am very sorry, you know. I mean, I don't know about the press. I do want to ask for forgiveness for family if anything, you know. I'm about to do the time I'm about to do. I'm saying, I want, like, I didn't have no family that I was close to that died in my family I really know because my mom and my brothers and sisters, so I can't say I understand, you know what I'm saying, somebody feels that I was really close to, because my brothers and sisters, my mom hasn't passed away or nothing like that, nobody took their life away. So, I can understand if they don't forgive me for what I have done. That is very, you know what I'm saying, understandable.
>
> I mean, I didn't mean to cause anybody grief, what I did, you know -- even though I'm only 17, I'm a man and I own up to my responsibility, so I am very sorry.

(ST, 14-15). After hearing from all parties, the court imposed sentence in accordance with the *Killebrew* agreement.

### B. Appellate Proceedings

Because petitioner was convicted pursuant to a guilty plea, Michigan law granted appellate review only by leave to appeal. MICH. CONST. art. 1 § 20; MICH. CT. R. 7.203(A)(1)(b). The court appointed appellate counsel for petitioner. On November 14, 2007, Attorney Gerald Ferry filed a delayed application for leave to appeal, raising two points. The application noted the passage in the presentence report that petitioner had been diagnosed with ADHD and numerous other mental health problems, and drew from this information a conclusion that the trial court ignored the issue of competency and asserted that "petitioner may or may not have been competent at the time of either the plea or the sentencing." (Application at 2, found in Michigan Court of Appeals Record, docket # 12). The application ignored the fact of the forensic examination and reports, which found that petitioner was both competent and responsible. The application raised two issues arising from this misinformation. First, it argued that the trial court ignored its constitutional obligation to determine whether petitioner was competent in circumstances raising a *bona fide* doubt on the issue of competence. Second, it asserted that petitioner was denied the right to meaningful allocution because of an affirmative lack of competency. By order entered December 28, 2007, the state Court of Appeals denied leave to appeal for lack of merit in the grounds presented. Petitioner pursued a *pro se* application for leave to appeal to the state Supreme Court, which was denied by standard order entered May 27, 2008. (Michigan Supreme Court Record, docket # 13).

### C. Habeas Corpus Action

Petitioner initiated this action by filing a *pro se* petition on November 28, 2008, within the one-year limitations period allowed by 28 U.S.C. § 2244(d)(1). The application raised

the same two issues asserted in counsel's delayed application for leave to appeal. Respondent filed an answer, supported by materials from the state trial and appellate courts. On December 22, 2010, this court entered an order to expand the record under Habeas Rule 7, directing respondent to file the presentence report and any materials relating to competency proceedings under seal, as those items did not appear in the Rule 5 materials originally filed by respondent. Respondent has filed the forensic reports and presentence investigation report under seal, and the matter is now ready for decision.

## **Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010). "Section 2254(d)(1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to

extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010).

## Discussion

### I. Due-Process Violation

Petitioner's first claim, read with due liberality, asserts that the trial court violated petitioner's right to due process by failing to order a competency evaluation in light of petitioner's mental health history. In *Pate v. Robinson*, 383 U.S. 375 (1966), the Supreme Court announced a procedural due-process right to a competency hearing whenever the facts or events presented to the trial court raise a bona fide doubt as to the defendant's competency. *See Drope v. Missouri*, 420 U.S. 162, 180 (1975). In recognizing this right, the Supreme Court did not prescribe any general standards for determining whether the trial court should order a competency examination *sua sponte*. Instead, the Supreme Court directed trial courts to consider "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence," all of which are relevant to the inquiry. *Drope*, 420 U.S. at 180; *see Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983). Because the state Court of Appeals denied leave to appeal in an unexplained, one-sentence order, the deference due under AEDPA does not apply, because there was no state-court adjudication on the merits. *Dorne v. Lafler*, 601 F.3d 439, 442 (6th Cir. 2010). *De novo* review is therefore required. *Id.* at 443.

Upon *de novo* review of the issue, I find it to be meritless. Petitioner's habeas claim is based on his appointed counsel's delayed application for leave to appeal in the state Court of Appeals, which seriously distorted the factual record. The application created the false impression

that petitioner's mental health history came up only in the presentence investigation report and that the sentencing judge ignored the issue and heedlessly proceeded to sentencing. The trial court record completely dispels this false impression. At the outset of district court proceedings, the state district judge ordered a full evaluation for both competency and legal responsibility. The state forensic center completed a thorough examination and issued a report, noting petitioner's history of mental health treatment but concluding that he did not suffer from any mental illness at the time of the examination. The examiner found petitioner both competent and legally responsible and thoroughly discussed the findings supporting these conclusions. The state prosecution did not proceed until the district court and defense counsel had been provided copies of the forensic examination reports.

The transcripts of both the guilty plea and sentencing proceedings fail to disclose any confusion, bizarre behavior, suicide attempts, or other indicia of mental illness displayed by petitioner. In light of the forensic reports and the lack of any unusual behavior, there was no reasonable ground for the trial judge to doubt petitioner's competence. The Supreme Court has never held that a history of psychiatric treatment, standing alone, renders a criminal defendant incompetent to stand trial. The lower federal courts regularly hold that a history of prior mental illness does not necessarily indicate that a defendant is presently incompetent to stand trial.

> "[N]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges." [*Card v. Singletary*, 981 F.2d 481, 487-88 (11th Cir. 1992)] (quoting *United States ex rel. Foster v. DeRobertis*, 741 F.2d 1007, 1012 (7th Cir.), *cert. denied*, 469 U.S. 1193 (1985)). Similarly, neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial. *McCune v. Estelle*, 534 F.2d 611, 612 (5th Cir. 1976). The fact that a defendant has been treated with anti-psychotic drugs does no *per se* render him incompetent to stand trial. *Fallada [v. Dugger]*, 819 F.2d [1564,] 1569 [(11th Cir. 1987)].

*Medina v. Singletary*, 59 F.3d 1095, 1107 (11th Cir. 1995).

It is true that the state trial court did not hold an on-the-record competency hearing. (*See* Respondent's Motion, docket # 24, ¶ 2). But the lack of a formal hearing violates due process only where there is "substantial evidence that a defendant is incompetent." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006) (citing *Pate*, 383 U.S. at 385-86). In the present case, in light of the thorough forensic examination, the lack of any confused or irrational behavior, and the absence of any indication on the record by defense counsel of problems with his client, there was simply no "reasonable basis" to fear that petitioner was incompetent. A formal hearing was not required by the Due Process Clause in these circumstances. *See United States v. Miller*, 531 F.3d 340, 348-50 (6th Cir. 2008); *Sturgeon v. Chandler*, 552 F.3d 604, 612 (7th Cir. 2009) (no *bona fide* doubt as to competency in light of medical opinions; no hearing necessary); *Taylor v. Horn*, 504 F.3d 416, 433-35 (3d Cir. 2007) (no present indicia of incompetency in light of forensic examination, despite mental health history).

In the present case, the trial court did not ignore petitioner's history of mental illness, but ordered a thorough investigation, which found petitioner competent to stand trial. His conduct in court showed no signs of incompetence. Petitioner's first habeas claim is based upon the false assertion that his history of mental illness first surfaced late in the case, when the presentence report was submitted. This is a patent untruth. The record reflects no substantial reason to doubt petitioner's competence at the time of sentencing. Upon *de novo* review, I find no violation of petitioner's procedural rights.

## II. Substantive Incompetency

Petitioner's second claim is that he was denied the right to meaningful allocution "due to lack of competency." Again, this claim finds its genesis in counsel's application for leave to appeal to the state Court of Appeals. The application was not supported by any proof of incompetence, but was based on the assumption that petitioner may have been incompetent.

The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. *See Godinez v. Moran*, 509 U.S. 389, 396 (1993). This is sometimes called a "substantive competency claim." *Medina*, 59 F.3d at 1106. In contrast to a procedural competency claim, a petitioner raising a substantive claim of incompetence must affirmatively demonstrate his or her incompetence by a preponderance of the evidence. *Id.* Only if petitioner presents clear and convincing evidence creating a "real, substantial, and legitimate doubt" as to his competence is he entitled to a hearing on a claim of substantive incompetence. *Smith v. Mullin*, 379 F.3d 919, 932 (10th Cir. 2004). This standard of proof is exceedingly high and requires that the facts "positively, unequivocally, and clearly generate legitimate doubt." *Card*, 981 F.2d at 484; *accord Allen v. United States*, 563 F. Supp. 2d 1335, 1338 (M.D. Fla. 2008).

Petitioner's unsupported assertion of incompetence at the time of sentencing fails to meet this stringent standard. Petitioner has never been adjudicated incompetent, nor did he produce in the state Court of Appeals any affirmative evidence of incompetence. To the contrary, all the evidence in the state court record refutes the after-thought claim of incompetence. Likewise, petitioner has presented no factual basis in this court to support a claim of incompetence at sentencing. I therefore conclude that petitioner's claim of substantive incompetence fails for lack of proof.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.

Dated: March 8, 2011　　　　　　　　　　　/s/ Joseph G. Scoville
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).